# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 4871 | **DATE** | 10/12/2010 |
| **CASE TITLE** | Taylor vs. Couture et al. | | |

**DOCKET ENTRY TEXT**

The Court grants Defendants' motion for summary judgment [121] and dismisses this lawsuit in its entirety. All pending dates and deadlines are stricken.

■ [ For further details see text below.]

Notices mailed by Judicial staff.
*Mail AO 450 form.

## STATEMENT

On April 23, 2010, Plaintiff John E. Taylor, who was a pretrial detainee at the Cook County Department of Corrections ("CCDOC") during the relevant time period, filed an Amended Complaint pursuant to 42 U.S.C. § 1983. In his Amended Complaint, Taylor alleges a due process claim based on inadequate medical care against Defendants Dr. Eileen Couture and Dr. Ann Marie Dunlap of Cermak Health Services of Cook County ("Cermak"), which is the healthcare provider for detainees housed at the CCDOC. Cook County is not a party to this lawsuit nor is there a claim based on *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), at issue, therefore, Taylor is suing Drs. Dunlap and Couture in their individual capacities. Before the Court is Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the Court grants Defendants' motion and dismisses this lawsuit in its entirety.

Continued...

| | Courtroom Deputy Initials: | KF |
|---|---|---|

# BACKGROUND

Taylor, a former pretrial detainee, was housed at the CCDOC from the date of his arrest in 2003 until November 15, 2007. (R. 123-1, Defs.' Rule 56.1 Stmt. Facts ¶¶ 2, 3.) Taylor is suing Defendants for refusing to dispense medications to him before he went to court during the time period of April through October 2007. (*Id*. ¶ 17, Ex. A, Taylor Dep., at 7-8.) Taylor is also suing Dr. Dunlap for reducing his pain medication during the relevant time period.[1] (*Id*. ¶ 4.)

The dispensing of medications in the relevant division, Division X, of the CCDOC was part of the nursing protocol. (*Id*. ¶ 5.) Although Dr. Couture was the Medical Director and Director of Nursing at Cermak during the relevant time period, she did not directly supervise the nurses. (*Id*. ¶ 6; Ex. C, Couture Dep., at 4; R. 140-1, Pl.'s Stmt. Facts ¶¶ 2, 4.) Instead, a registered nurse, Shawn Withers – who is not a named Defendant in this lawsuit – directly supervised the nurses. (Defs.' Stmt. Facts ¶ 7.) As Medical Director, however, Dr. Couture's duties included overseeing current practices and improving services. (Pl.'s Stmt. Facts ¶ 3.) The only medical record showing that Dr. Couture treated Taylor is dated September 11, 2007, at which time Dr. Couture examined Taylor and wrote him a prescription for Robaxin, a non-narcotic muscle relaxant, for his lower back pain. (Defs.' Stmt. Facts ¶¶ 8, 9, 10, Couture Dep., at 27, 30; Ex. B, Dunlap Dep., at 47.) At that time, Dr. Couture made no changes to Taylor's existing prescriptions, including a powerful nerve medication, Neurontin, which Taylor took for neuropathy and pain associated with his previous radiation therapy. (*Id*. ¶¶ 9, 11, Dunlap Dep., at 47.) Meanwhile, Taylor admits that between April 2007 and his criminal trial in August 2007, he did not have any conversations with Dr. Couture. (Taylor Dep., at 44.)

Dr. Dunlap was one of the doctors who treated Taylor while he was housed in Division X at the CCDOC. (*Id*. ¶ 14.) On Division X, nurses distributed medications three times a day – morning, midday, and evening. (Pl.'s Stmt. Facts ¶ 8.) On February 27, 2007, Dr. Dunlap wrote Taylor a prescription for (1) Elavil 50 milligrams at night for eight weeks, (2) Neurontin 900 milligrams three times a day for eight weeks, and (3) clindamycin (a moisturizing cream) to affected areas twice daily. (*Id*. ¶ 11, Dunlap Dep., at 23; Defs.' Stmt. Facts ¶ 16.) Dr. Dunlap prescribed the Neurontin and Elavil for pain. (Dunlap Dep., at 20-21.) On April 20, 2007, Dr. Dunlap reduced Taylor's Neurontin prescription from 900 milligrams three times a day to 900 milligrams two times a day. (Pl.'s Stmt. Facts ¶ 13.) On May 31, 2007, Physician Assistant Manisha Patel wrote a prescription changing Taylor's dosage of Neurontin back to 900 milligrams three times a day. (*Id*. ¶ 14.) On July 20, 2007, Dr. Dunlap reduced Taylor's Neurontin from 900 milligrams three times a day to 600 milligrams three times a day. (*Id*. ¶ 15; Defs.' Stmt. Facts ¶ 18.)

# SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to

---

[1] In his Amended Complaint, Taylor also alleges that the nurses did not distribute his pain medication before he went to Stroger Hospital to see his specialists at the pain clinic. Taylor fails to support this argument in his response brief, and thus he has waived this claim. *See Steen v. Myers,* 486 F.3d 1017, 1020 (7th Cir. 2007) (absence of discussion in legal brief amounts to abandonment of claim).

those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted); *see also* Fed.R.Civ.P. 56(e)(2) (requiring adverse party to "set out specific facts").

## ANALYSIS

In his Amended Complaint, Taylor alleges that Drs. Couture and Dunlap were deliberately indifferent to his serious medical need, namely, his chronic pain. The Fourteenth Amendment's Due Process Clause applies to pretrial detainees' conditions of confinement claims and entitles pretrial detainees to at least the same protections against deliberate indifference as available to convicted prisoners under the Eighth Amendment. *See Minix v. Canarecci,* 597 F.3d 824, 831 (7th Cir. 2010). Thus, under both the Eighth and Fourteenth Amendments, a prison or jail official violates the Constitution if she is deliberately indifferent to a prisoner's serious medical needs. *See McGowan v. Hulick,* 612 F.3d 636, 640 (7th Cir. 2010) (citing *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). The test for the deliberate indifference to a serious medical need has both objective and subjective elements. *See Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Rodriguez v. Plymouth Ambulance Serv.,* 577 F.3d 816, 829 (7th Cir. 2009). Specifically, a plaintiff must demonstrate: "(1) that he suffered from an objectively serious medical condition; and (2) that the individual defendant was deliberately indifferent to that condition." *Berry v. Peterman,* 604 F.3d 435, 440 (7th Cir. 2010).

Assuming for purposes of this summary judgment motion that chronic pain is a serious medical condition, the Court turns to the second element of establishing a deliberate indifference claim, namely, that Drs. Couture and Dunlap were deliberately indifferent to Taylor's serious medical needs, because this element is dispositive. *See Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997) (existence of chronic, substantial pain constitutes objectively serious medical need). As to this second element, Taylor must show that Defendants had the subjective knowledge of the risk to the his health and disregarded that risk. *See Gayton v. McCoy,* 593 F.3d 610, 620 (7th Cir. 2010). "Evidence that the official acted negligently is insufficient to prove deliberate indifference." *Id.*; *see also McGowan,* 612 F.3d at 640 ("negligence, even gross negligence, does not violate the Constitution."). Instead, "[d]eliberate indifference is intentional or reckless conduct." *Berry,* 604 F.3d at 440; *see also Lee v. Young,* 533 F.3d 505, 509 (7th Cir. 2008) ("conduct must be reckless in the criminal sense").

### A.     Dr. Dunlap's Reduction of Taylor's Neurontin Prescription

First, Taylor argues that Dr. Dunlap knew of his serious medical condition, namely, that he was in chronic pain, and disregarded his condition by decreasing his pain medication. Evidence in the record reflects that Dr. Dunlap reduced Taylor's Neurontin prescription from 900 milligrams three times a day to 900 milligrams two times a day on April 27, 2007 and from 900 milligrams three times a day to 600 milligrams three times a day on July 20, 2007. In her deposition, Dr. Dunlap testified that the first time she reduced Taylor's Neurontin prescription was because she had examined Taylor and concluded that he had relatively minor pain. (Dunlap Dep., at 33-34.) The second time she reduced Taylor's pain medication – after PA Patel had increased it – was when she found out that Taylor was doing manual labor, including scrubbing and mopping floors, and that "he was in danger of harming himself by doing such hard manual labor with the pain medications masking the pain." (*Id*. at 39-41; Taylor Dep., at 16, 27.)

Under these circumstances, Dr. Dunlap was exercising her independent medical judgment regarding the appropriate amount of medication and treatment for Taylor's chronic pain, and thus she was not deliberately indifferent to Taylor's medical need. *See Berry,* 604 F.3d at 441 ("Neither medical malpractice nor mere

disagreement with a doctor's medical judgment is enough to prove deliberate indifference"). In addition, there is no evidence in the record that Dr. Dunlap's reduction of Taylor's Neurontin prescription was "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *See Norfleet v. Webster,* 439 F.3d 392, 396 (7th Cir. 2006) ("To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment"). Therefore, Taylor has failed to present evidence raising a genuine issue of material fact for trial that Dr. Dunlap's reduction of his Neurontin prescription amounted to deliberate indifference to his chronic pain.

      **B.**      **Failure to Provide Medications Before Court**

Next, Taylor argues that both Drs. Dunlap and Couture were deliberately indifferent to his chronic pain because he did not receive his morning and noon Neurontin dosage before leaving for court on certain days from April through October 2007, including four days during his August 2007 criminal trial. On May 28, 2007 and July 26, 2007, Taylor wrote grievances about not receiving his medications before leaving for court, and, although there is evidence in the record that the grievances concerning Taylor's medical care were sent to the applicable medical department and physicians, there is no evidence in the record that the grievances were referred to either Dr. Dunlap or Dr. Couture. (Pl.'s Stmt. Facts ¶¶ 21, 22, 23.) That being said, viewing the evidence and all reasonable inferences in a light most favorable to Taylor, there is sufficient evidence in the record creating a genuine issue of material fact that Drs. Dunlap and Couture were aware that the nurses did not distribute Taylor's medications to him before he went to court on these days. (*See id*. ¶¶ 24, 27, 31, 35.)

Meanwhile, courts examine the totality of a prisoner's medical care in determining whether prison officials have been deliberately indifferent to a prisoner's serious medical needs – keeping in mind that serious mistreatment for a short period of time may evidence deliberate indifference. *See Cavalieri v. Shepard,* 321 F.3d 616, 626-27 (7th Cir. 2003); *Reed v. McBride,* 178 F.3d 849, 855-56 (7th Cir. 1999). On the other hand, isolated instances of neglect cannot support a finding of deliberate indifference. *See Gutierrez,* 111 F.3d at 1375. The Court thus turns to Taylor's overall treatment to determine whether Defendants were deliberately indifferent to Taylor's chronic pain.

Evidence in the record reveals that during the relevant time period, Taylor saw a neurologist at least once a month, along with a urologist, a podiatrist, and an oncologist. (Taylor Dep., at 17, 20-21, 66; Dunlap Dep., at 39.) Further, Taylor went to Stroger Hospital's pain clinic and physical therapy on numerous occasions during this time period. (Taylor Dep., at 66; Dunlap Dep., at 39, 50.) Taylor's treatment also included different medications to manage his pain, including cortisone injections. (Taylor Dep., at 21-22.) In addition, Taylor testified that the neurologist and other doctors at Cermak monitored his pain medications and that the medications he was taking – including Neurontin, Elavil, and Naproxen – complemented his treatment at the pain clinic. (*Id*. at 21, 25-26, 34.)

In his deposition, Taylor also testified that between April and October of 2007, he went to court once or twice a month except during his trial in August 2007. (*Id*. at 17-18.) Taylor testified that he went to court four times during his criminal trial and on one of those days a nurse distributed his medications before court. (*Id*. at 37-38.) Accordingly, Taylor went to court approximately ten to twelve times during this six month period, and thus took his Neurontin medication only in the evening on these days, as well as Elavil at night. (*Id*. at 37; *see also* Dunlap Dep., at 23.) Meanwhile, although Taylor suggests that the nurses should have given him his medication for the morning and midday dosages when he went to court, Taylor admits that the reason that CCDOC medical staff did not distribute packages of daily or weekly medication, also known as blister packs, was out of concerns of inmate overdose. (Taylor Dep., at 60; *see also* Dunlap Dep., at 15; Couture Dep., at 22-23.)

Construing the facts and all reasonable inferences in Taylor's favor, CCDOC personnel acted with diligence in treating Taylor's chronic pain during the time period between April and October 2007 by providing numerous medical services and medication for his chronic pain. In addition, evidence in the record reveals that – at most – Division X nurses did not distribute Taylor's Neurontin in the morning and midday on ten to twelve occasions during the six month period in question. The nurses, however, continued to distribute Neurontin in the evening, as well as Elavil at night. Meanwhile, as Taylor admits, health care personnel did not distribute daily blister packets of medication out of concern for potential inmate overdoses. As such, considering Taylor's total care during the six month period in which he received continuous care, the nurses' delay in administering Taylor's pain medication on ten to twelve occasions is not deliberate indifference to his chronic pain. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000) (isolated incidents of delay in administering medications not deliberate indifference). At best, the nurses' delay in distributing Taylor's pain medication constitutes negligence, namely, an inadvertent or neglectful failure to provide Taylor's medication in a timely manner. *See Estelle v. Gamble,* 429 U.S. at 105-06; *see also Duckworth v. Ahmad,* 532 F.3d 675, 679 (7th Cir. 2008) ("Deliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts."); *Norfleet,* 439 F.3d at 396 ("medical malpractice does not give rise to a constitutional violation").

As the Seventh Circuit instructs, "the Eighth Amendment does not require that prisoners receive 'unqualified access to health care,'" but "[r]ather, they are entitled to only 'adequate medical care.'" *Johnson v. Doughty,* 433 F.3d 1001, 1013 (7th Cir. 2006) (citations omitted). Here, the physicians and nurses of Cermak Health Services provided Taylor with continuous, adequate medical care to manage his chronic pain despite the occasions when the nurses did not distribute his pain medications until the evening. *See Forbers v. Edgar,* 112 F.3d 262, 267 (7th Cir. 1997) (under the Constitution, a prisoner entitled to "reasonable measures to meet a substantial risk of serious harm"). Based on the medical treatment provided by Cermak Health Services and Drs. Dunlap and Couture, there is insufficient evidence in the record creating a genuine issue of fact for trial that Drs. Dunlap and Couture were deliberately indifferent to Taylor's chronic pain in violation of the Constitution. Therefore, the Court grants Defendants' summary judgment motion.